[NOTE. For other proceedings in relation to the same bankrupt estate, see Cases Nos. 1,703, 1,704.]

## Case No. 1,703.

In re BOUSFIELD & POOLE MANUF'G CO.

[16 N. B. R. 489.][1]

District Court, N. D. Ohio. Oct. 19, 1877.

BANKRUPTCY — PREFERENCE — PENALTY FOR RECEIVING — PROCURING FRAUDULENTLY — WHAT AMOUNTS TO.

1. The taking of a bill of sale of logs purchased with money furnished by the creditor is not a preference unless it appears that such bill of sale included more than the creditor was entitled to.

2. An intent to gain a preference, accompanied by acts to accomplish it, but which entirely fail, so that no preference is received, does not come within the provisions of the bankrupt act, which impose penalties upon creditors who knowingly receive a preference.

3. All transactions to prefer a bona fide creditor come within the four months' clause of section 5128; the six months' clause applies to other creditors.

4. An effort to secure an honest debt from a failing creditor is not an actual fraud within the meaning of section 5021.

[On certificate of register in bankruptcy.]

In the matter of exceptions filed by the assignee to the claim of the Ohio Wooden Ware Company. [Exceptions dismissed.]

The Bousfield & Poole Manufacturing Company made an assignment under the state law to J. A. Reddington for the benefit of its creditors. On March 6, 1876, the Bousfield & Poole Manufacturing Company filed a voluntary petition in bankruptcy, and on March 8, 1876, was adjudged bankrupt. On September 26, 1877, the Ohio Wooden Ware Company proved in the usual form its claim on two notes, made by bankrupt, on which there was claimed due at the time of filing of the petition the sum of five thousand two

---

[1] [Reprinted by permission.]

hundred and ninety-two dollars and thirty-three cents. To this claim the assignee on September 27, 1877, filed exceptions, and asked that the claim be expunged for the reason: That, upon the books of the bankrupt, the Ohio Wooden Ware Company appear to be indebted to said bankrupt in a large sum, to wit, over thirteen thousand dollars. Issue was joined and the following questions arose: 1st. Whether the Bousfield & Poole Manufacturing Company has a set-off against the claim of the Ohio Wooden Ware Company. 2d. Whether the Ohio Wooden Ware Company received an unlawful preference by the purchase of logs of bankrupt on September 8, 1875. 3d. Whether the Ohio Wooden Ware Company received an unlawful preference by the purchase of zinc of bankrupt, on October 23, 1875. 4th. Whether the Ohio Wooden Ware Company received an unlawful preference by the purchase of bankrupt of merchandise and manufactured articles, consisting of glue, washboards, woodenware, and other articles, in October, 1875.

Opinion of Register:

The first defence set up by the assignee is that there is existing upon the books of the bankrupt, an account which shows a balance due from the Ohio Wooden Ware Company, of more than sufficient to cancel its claim in this case, viz.:

On Ledger "C," page 53, a balance of ...................................... $10,919 53
On Ledger "C," page 179, a balance of ...................................... 2,547 54

Total ........................ $13,467 07

The testimony taken in the case shows substantially this state of facts in regard to these accounts.

Under date of September 8, 1875, there is a charge against the Ohio Wooden Ware Company for

250,000 feet of white pine timber, at $10.75...................... $ 2,687 50
1,000,000 feet of white pine timber, at $13.75.................. 13,750 00

Total ...................... $16,437 50

—Which amount went to make up the balance on Ledger C, page 179, of two thousand five hundred and forty-seven dollars and fifty-four cents. Mr. J. M. Gorham testifies, that of this amount of timber so charged at thirteen dollars and seventy-five cents per thousand, there was six hundred and eleven thousand two hundred and twenty-five feet which was never received by the Ohio Wooden Ware Company, and amounted to eight thousand four hundred and four dollars and forty-four cents. There is no testimony to contradict this, and I think the amount should be deducted.

Under date of October 23, 1875, there is a charge against the Ohio Wooden Ware Company, for

43 casks of sheet zinc............ $5,512 27

It is agreed by the parties that this zinc was replevined by May & Co., of Boston, of whom it was purchased by the Bousfield & Poole Manufacturing Company, claiming that it was obtained from them by fraud, by the Bousfield & Poole Manufacturing Company, and that no title passed to either the Bousfield & Poole Manufacturing Company, or to the Ohio Wooden Ware Company; that a verdict was rendered in said case for May & Company, upon which a judgment was rendered, which is still in full force. From this it seems that the Ohio Wooden Ware Company obtained no title to the zinc charged against them, and received no benefit therefrom, and although the charge was proper at the time, it should be now stricken out, or a corresponding credit made.

Under date of August 7, 1875, there is a charge against the Ohio Wooden Ware Company for two notes:

One for........................ $2,597 50
And the other for................. 2,611 66

Total ...................... $5,209 16

It is admitted by the parties, and the proof shows that these two notes are the two notes upon which the Ohio Wooden Ware Company makes proof of its claim in this case. Upon this state of facts the account would, in my opinion, stand as follows:

Ohio Wooden Ware Company, Dr.
Balance on Ledger "C," page 53.. $10,919 53
Balance on Ledger "C," page 179.. 2,547 54

$13,467 07

Ohio Wooden Ware Company, Cr.
By deficit on timber.... $8,404 34
By amount charged for the zinc............ 5,512 27

$13,916 61

Leaving a balance due the Ohio Wooden Ware Company of..... $ 459 54

—Besides the amount due on the two notes embraced in the proof of claim. I am therefore of the opinion that no set-off exists against either one of these notes.

The second defense set up by the assignee is, that on the 8th day of September, 1875, the claimant, knowing that the bankrupt was insolvent, purchased of it timber and logs of the value of sixteen thousand four hundred and thirty-seven dollars and fifty cents, and thereby obtained an illegal preference, and that by reason thereof they are not entitled to prove only a moiety of their claim. The testimony shows that an arrangement was entered into between the bankrupt and the claimant for the purchase of logs, by which it was arranged and understood that the Ohio Wooden Ware Company should furnish the Bousfield & Poole Manufacturing Company with money to buy logs for both, it being understood that the Bousfield & Poole Manufacturing Company were to have about two-thirds of the logs, and the Ohio Wooden Ware Company about one-

third of them. The logs were purchased by and in the name of the Bousfield & Poole Manufacturing Company, and when brought to Cleveland were landed upon the dock of the Bousfield & Poole Manufacturing Company, that company having a dock and hoisting apparatus, and the Ohio Wooden Ware Company having none. From this pile of logs each would use as their necessities required, keeping an account of the amount used in what is called a log account. On the 8th of September, 1876, the Ohio Wooden Ware Company took from the Bousfield & Poole Manufacturing Company a bill of sale of all the logs remaining upon the dock, knowing at the time that the Bousfield & Poole Manufacturing Company was insolvent. It is evident from the testimony that the Ohio Wooden Ware Company furnished the money to the Bousfield & Poole Manufacturing Company for the purchase of logs for them, and with the understanding that the logs were to be delivered to them on the dock of the Bousfield & Poole Manufacturing Company at the cost thereof, and when delivered there they were entitled to take as many logs as the money which they had furnished had paid for. The logs were purchased on joint account, and in case no division had taken place before the bankruptcy the assignee could have been required to give an account to the Ohio Wooden Ware Company for the full amount of their interest in the logs. A separation of the interest of the Ohio Wooden Ware Company was made by the bill of sale on September 8, 1875. I think the testimony shows, and it seems to have been the understanding of the parties, that the Ohio Wooden Ware Company were the owners of so much of the logs as their money paid for. As the testimony does not show that the bill of sale was given to them for any more logs than they were entitled to, I am of the opinion that in taking the logs they received no preference, but only took what they had paid for, and that which in law belonged to them. The record shows that this is a voluntary petition, filed on March 6, 1876; the alleged preference occurred five months and twenty-eight days before the filing of the petition. I do not think that the testimony exposes any actual fraud, so as to bring it within the construction given by the courts to the six months' provisions contained in section 5129.

The third defense set up by the assignee is, that on the 23d day of October, 1875, the claimant, knowing that the bankrupt was insolvent, purchased of it forty-three casks of sheet zinc of the value of five thousand five hundred and twelve dollars and twenty-seven cents, and thereby obtained an illegal preference, and that by reason thereof they are not entitled to prove only a moiety of their claim. The testimony fully establishes that the officers of the Ohio Wooden Ware Company, at the time they received this zinc, knew that the Bousfield & Poole Manufac-

turing Company was insolvent; that they took it in payment of a pre-existing debt, and more than four months before the filing of the petition in bankruptcy, no consideration being paid at the time. The testimony further shows that the Bousfield & Poole Manufacturing Company, at the time transferred the zinc to the Ohio Wooden Ware Company, had no title, and conveyed no title, to the Ohio Wooden Ware Company, so that the Ohio Wooden Ware Company although it sought to obtain a preference, did not, in fact, obtain any. The bankrupt act, section 5084, provides that any person who has accepted a preference shall not prove his claim, etc. Section 5021 provides, that if the person receiving such payment or conveyance had reasonable cause to believe that the debtor was insolvent, and knew that a fraud on this act was intended, such person, if a creditor, shall not, in cases of actual fraud on his part, be allowed to prove for more than a moiety of his debt. The intent to obtain a preference accompanied by acts to accomplish it, but which entirely fail, so that no preference is received, does not, in my opinion, come within those provisions of the bankrupt act which impose penalties upon creditors who knowingly receive a preference.

The fourth defence set forth by the assignee is that the Ohio Wooden Ware Company received an unlawful preference, by the purchase from the bankrupt of merchandise and manufactured articles, consisting of glue, wash-boards, woodenware, and other articles, in October, 1875. It will be seen on examination of the testimony that no evidence was offered to sustain this allegation.

A question arises as to whether any of these alleged preferences occurred within the time specified by the bankrupt act, which permits or requires the court to pronounce them fraudulent. They all occurred more than four months before the filing of the petition, and were acts to secure or pay a then existing creditor. The courts seem to have held that all transactions to prefer a bona fide creditor come within the four months' clause, section 5128: "After the lapse of four months the preferences—simple preferences—which an insolvent debtor may have made, are to be held valid as against all the world so far as the preferred creditor is concerned." See cases cited, ninth edition of Bump's Bankruptcy, pages 799 and 800. The six months' provision is held by the courts not to apply to cases arising between the bankrupt and a bona fide creditor, but between the bankrupt and others. See ninth edition of Bump's Bankruptcy, pages 828 and 829, and cases there cited: especially Bean v. Brookmire [Case No. 1,168]; Gibson v. Warden, 14 Wall. [81 U. S.] 244; Hubbard v. Allaire Works [Case No. 6,814]; Babbitt v. Walbrun [Id. 694].

Still another question arises, and that is whether a creditor who, more than four months before the bankruptcy, received a

preference, knowing that the bankrupt was insolvent, can prove his claim for more than a moiety. Section 5021 provides: "And such person (that is, the person receiving a payment or conveyance) if a creditor, shall not, in cases of actual fraud, be allowed to prove for more than a moiety of his debt." There is nothing dishonest or illegal in a creditor securing a debt due him from a failing debtor. He may take payment or security, knowing the insolvency, and there is no dishonesty or actual fraud in it. If, however, within the three months bankruptcy proceedings intervene, he may lose the payment or security thus honestly taken. If, however, the three months expires, his title to the payment or security taken has become perfect. But does the penalty prohibiting him from proving but a moiety of his claim remain? The statute in terms makes no limitation, but provides that no creditor shall, in case of actual fraud on his part, prove but a moiety of his claim. I can find no case deciding this question, but am inclined to the opinion that in cases of actual fraud this penalty remains. But what is the actual fraud specified? It is something more, in my opinion, than an effort to secure an honest debt. It contemplates some act of the creditor's which is actually fraudulent at the time it is committed. It does not, in my opinion, embrace the act of a creditor who attempts by proper and ordinary effort to secure an honest debt—which act may afterward become a legal fraud by reason of the filing of a petition and adjudication in bankruptcy. "A mere fraud on the bankrupt law by accepting a preference in violation of its provisions is not an actual fraud." In re Riorden [Case No. 11,852.] In my judgment the act of the Ohio Wooden Ware Company in obtaining the payment was honest at the time, and no actual fraud was committed by it so as to prevent it from having its entire claim in this case. I therefore recommend that the petition and exceptions filed by the assignee be dismissed, and that the claim be allowed.

M. R. Keith, Register.

C. B. Bernard, assignee in person.
Charles E. Pennewell and Benjamin R. Beavis, for Ohio Wooden Ware Co.

WELKER, District Judge. I have carefully examined the foregoing opinion of M. R. Keith, register, and considered the arguments and authorities submitted by counsel in this case, and fully concur in the opinion of the register, and direct that an order be made dismissing the petition and exceptions filed by the assignee; and that an order be made requiring the assignee to pay to the above-named creditor such dividend as other creditors of the same class may be entitled to receive.

[NOTE. For other proceedings relating to the same bankrupt estate, see Cases Nos. 1,702 and 1,704.]